**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DEBORAH WHITE,** | |
| **Plaintiff,** | **Case No.:** |
| **v.** | |
| **CAPITAL MANAGEMENT SERVICES, LP, MONARCH RECOVERY MANAGEMENT, INC., REAL TIME RESOLUTIONS, INC., APELLES, LLC, AND U.S. BANK, N.A.,** | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

Plaintiff Deborah White, by and through the undersigned counsel, complains, states, and alleges against defendants Capital Management Services, LP, Monarch Recovery Management, Inc., Real Time Resolutions, Inc., Apelles, LLC, and U.S. Bank, N.A., as follows:

## INTRODUCTION

1. This is an action to recover damages for negligence, substantially assisting in violations of the FDCPA, and violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA").

2. In 1977, Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 USC §§ 1692 *et seq.*, in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.* Congress concluded that "existing laws . . . [we]re inadequate to protect consumers,"

1

and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) and (c).

3.     Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id*., § 1692(e).  After determining that the existing consumer protection laws were inadequate, Congress gave consumers a private cause of action against debt collectors who failed to comply with the Act. *Id*., § 1692k.

4.     In determining whether a collection letter violates the FDCPA, courts in the Third Circuit apply the "least sophisticated consumer standard." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015). The standard is an objective one, meaning the specific consumer need not prove that she was actually confused or misled. See *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014) ("[T]he FDCPA does not require that a plaintiff actually be confused.").

5.     The FDCPA does not ordinarily require proof of an intentional violation, and is considered a strict liability statute, whereby a single violation is sufficient to establish civil liability against a debt collector.

**JURISDICTION AND VENUE**

6.     This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337 and 15 U.S.C. § 1692k(d).

7.     This court has jurisdiction over defendants Capital Management Services, LP, Monarch Recovery Management, Inc., Real Time Resolutions, Inc., Apelles, LLC, and U.S. Bank, N.A. because defendants Capital Management Services, LP, Monarch Recovery Management, Inc., Real Time Resolutions, Inc., Apelles, LLC, and U.S. Bank, N.A. regularly conduct and

2

transact business in this Commonwealth, have sufficient minimum contacts in this Commonwealth and Judicial District, and part of the conduct complained of herein occurred in this Judicial District.

8.    Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because defendants Capital Management Services, LP, Monarch Recovery Management, Inc., Real Time Resolutions, Inc., Apelles, LLC, and U.S. Bank, N.A. are located in this Judicial District and a part of the conduct complained of herein occurred in this Judicial District.

## PARTIES

9.    Plaintiff Deborah White ("Plaintiff") is a natural person who is a citizen of the State of Nevada, residing in North Las Vegas, Clark County, Nevada.

10.    Plaintiff is a "consumer" as that term defined by 15 U.S.C. § 1692a(3).

11.    Defendant Capital Management Services, LP ("Capital Management") is a company existing under the laws of the State of New York, with its principal place of business in Buffalo, New York, and is doing business in the Commonwealth of Pennsylvania, and this Judicial District.

12.    Capital Management has transacted business within this Commonwealth as is more fully set forth hereinafter in this Complaint.

13.    Capital Management regularly collects or attempts to collect debts asserted to be owed to others.

14.    Capital Management is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

15.    The principal purpose of Capital Management's business is the collection of such debts.

16.    Capital Management uses instrumentalities of interstate commerce, including

3

telephones and the mails, in furtherance of its debt collection business.

17. Capital Management is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

18. Defendant Monarch Recovery Management, Inc. ("Monarch") is a company existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Bensalem, Pennsylvania, and is doing business in the Commonwealth of Pennsylvania, and this Judicial District.

19. Monarch has transacted business within this Commonwealth as is more fully set forth hereinafter in this Complaint.

20. Monarch regularly collects or attempts to collect debts asserted to be owed to others.

21. Monarch is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

22. The principal purpose of Monarch's business is the collection of such debts.

23. Monarch uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

24. Monarch is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

25. Defendant Real Time Resolutions, Inc. ("RTR") is a company existing under the laws of the State of Texas, with its principal place of business in Dallas, Texas, and is doing business in the Commonwealth of Pennsylvania, and this Judicial District.

26. RTR has transacted business within this Commonwealth as is more fully set forth hereinafter in this Complaint.

27. RTR regularly collects or attempts to collect debts asserted to be owed to others.

28. RTR is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

29. The principal purpose of RTR's business is the collection of such debts.

30. RTR uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

31. RTR is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

32. Defendant Apelles, LLC ("Apelles") is a company existing under the laws of the State of Ohio, with its principal place of business in Middletown, Ohio, and is doing business in the Commonwealth of Pennsylvania, and this Judicial District.

33. Apelles has transacted business within this Commonwealth as is more fully set forth hereinafter in this Complaint.

34. Apelles regularly collects or attempts to collect debts asserted to be owed to others.

35. Apelles is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

36. The principal purpose of Apelles's business is the collection of such debts.

37. Apelles uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

38. Apelles is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

39. Defendant U.S. Bank, N.A. ("USB"), a wholly owned subsidiary of U.S. Bancorp, a Delaware corporation, with its principal place of business in Minneapolis, Minnesota, and doing business in the Commonwealth of Pennsylvania, and this Judicial District.

40. Capital Management, Monarch, RTR, Apelles, and USB are collectively referred to hereinafter as the "Defendants."

**FACTUAL ALLEGATIONS**

41.    Defendants allege Plaintiff owes a debt for a personal credit card account to USB.

42.    Plaintiff retained counsel to represent her with respect to the alleged debt.

43.    On June 11, 2025, Plaintiff's attorneys notified USB of its representation of Plaintiff concerning the alleged debt and demanded that all further direct communications with Plaintiff concerning the alleged debt cease (the "Letter of Representation").

44.    The Letter of Representation set forth Plaintiff's attorneys' name and address.

45.    Thereafter, on an exact date known only to Capital Management and USB, the alleged debt was transferred, assigned, or otherwise placed with Capital Management for the purposes of collection on behalf of USB.

46.    It is standard practice in the accounts receivable management industry, when debts are sold and/or assigned to downstream entities, including debt collectors, for such debts to be identified as subject to attorney representation letters and/or cease and desist letters.

47.    It is standard practice in the accounts receivable management industry, when debts are sold and/or assigned in bulk portfolios to downstream entities, including debt collectors, for such portfolios to be identified, either explicitly, or through an indicator in the portfolio's file name, that such accounts are subject to attorney representation letters and/or cease and desist letters, such as "Cease and Desist Bulk," "C&D-POA," "CD-POA," "CAD," or "DSC.".

48.    Further, it is in the interest of public policy when debts are transferred and/or assigned to downstream entities, including debt collectors, for all information to be transferred, including notices of representation and cease and desists.

49.    Capital Management was notified by USB of Plaintiff's attorneys' representation in the transfer file(s) or the transfer file name included a notation which informed Capital

6

Management that the portfolio was a portfolio of accounts of consumer who were represented by counsel.

50.     Capital Management was notified by USB of Plaintiff's attorneys' representation in the USB account level documentation for Plaintiff.

51.     Capital Management was notified by USB of Plaintiff's attorneys' information in the USB account level documentation for Plaintiff.

52.     Capital Management was notified by USB of the cease and desist in the transfer file(s) or the transfer file name included a notation which informed Capital Management that the portfolio was a portfolio of accounts that previously provided a cease and desist from further direct communication with the consumer.

53.     USB owed a duty of reasonable care to Plaintiff in the collection of the alleged debt and the transfer of the account.

54.     Despite the Letters of Representation, in an effort to collect the alleged debt, Capital Management caused a letter dated July 10, 2025 (the "July Letter") to be sent to Plaintiff directly.

55.     Plaintiff received and read the July Letter.

56.     Plaintiff's attorney did not consent to Capital Management's direct communication with Plaintiff.

57.     Capital Management did not send the July Letter to Plaintiff's attorney.

58.     Capital Management did not send any letters concerning the alleged debt to Plaintiff's attorney prior to sending the July Letter.

59.     Capital Management did not attempt to communicate at all with Plaintiff's attorneys concerning the alleged debt prior to sending the July Letter.

60.     It is standard practice for creditors to inform downstream entities, including debt

7

collectors, of attorney representation letters and/or cease and desist letters received from consumers' attorneys.

61. It is standard practice, when debts are sold and/or assigned to downstream entities, including debt collectors, that such debts are identified as subject to attorney representation letters and/or cease and desist letters.

62. It is standard practice, when debts are sold and/or assigned in bulk portfolios to downstream entities, including debt collectors, that such portfolios are identified, either explicitly, or through an indicator in the portfolio's file name, as containing accounts that are subject to attorney representation letters and/or cease and desist letters.

63. Capital Management had actual notice of the Letter of Representation.

64. Capital Management had actual notice of the Letter of Representation either from the placement file or through a client portal provided to Capital Management by USB.

65. Then, on July 29, 2025, Plaintiff's attorneys again notified Capital Management and USB of its representation of Plaintiff concerning the alleged debt and demanded that all further direct communications with Plaintiff concerning the alleged debt cease (the "Additional Letter of Representation").

66. Upon information and belief, the agreement between Capital Management and USB requires Capital Management to inform USB of all notices of attorney representation and cease and desists regarding a USB account.

67. Thereafter, on an exact date known only to Monarch and USB, the alleged debt was transferred, assigned, or otherwise placed with Monarch for the purposes of collection on behalf of USB.

68. Monarch was notified by USB of Plaintiff's attorneys' representation in the transfer

file(s) or the transfer file name included a notation which informed Monarch that the portfolio was a portfolio of accounts of consumer who were represented by counsel.

69.    Monarch was notified by USB of Plaintiff's attorneys' representation in the USB account level documentation for Plaintiff.

70.    Monarch was notified by USB of Plaintiff's attorneys' information in the USB account level documentation for Plaintiff.

71.    Monarch was notified by USB of the cease and desist in the transfer file(s) or the transfer file name included a notation which informed Monarch that the portfolio was a portfolio of accounts that previously provided a cease and desist from further direct communication with the consumer.

72.    Despite the Letter of Representation and Additional Letter of Representation, in an effort to collect the alleged debt, Monarch caused a letter dated November 10, 2025 (the "November Letter") to be sent to Plaintiff directly.

73.    Plaintiff received and read the November Letter.

74.    Plaintiff's attorney did not consent to Monarch's direct communication with Plaintiff.

75.    Monarch did not send the November Letter to Plaintiff's attorney.

76.    Monarch did not send any letters concerning the alleged debt to Plaintiff's attorney prior to sending the November Letter.

77.    Monarch did not attempt to communicate at all with Plaintiff's attorneys concerning the alleged debt prior to sending the November Letter.

78.    It is standard practice for creditors to inform downstream entities, including debt collectors, of attorney representation letters and/or cease and desist letters received from

consumers' attorneys.

79.     It is standard practice, when debts are sold and/or assigned to downstream entities, including debt collectors, that such debts are identified as subject to attorney representation letters and/or cease and desist letters.

80.     It is standard practice, when debts are sold and/or assigned in bulk portfolios to downstream entities, including debt collectors, that such portfolios are identified, either explicitly, or through an indicator in the portfolio's file name, as containing accounts that are subject to attorney representation letters and/or cease and desist letters.

81.     Monarch had actual notice of the Letter of Representation and Additional Letter of Representation.

82.     Monarch had actual notice of the Letter of Representation and Additional Letter of Representation either from the placement file or through a client portal provided to Monarch by USB.

83.     Thereafter, on an exact date known only to RTR and USB, the alleged debt was transferred, assigned, or otherwise placed with RTR for the purposes of collection on behalf of USB.

84.     RTR was notified by USB of Plaintiff's attorneys' representation in the transfer file(s) or the transfer file name included a notation which informed RTR that the portfolio was a portfolio of accounts of consumer who were represented by counsel.

85.     RTR was notified by USB of Plaintiff's attorneys' representation in the USB account level documentation for Plaintiff.

86.     RTR was notified by USB of Plaintiff's attorneys' information in the USB account level documentation for Plaintiff.

87.     RTR was notified by USB of the cease and desist in the transfer file(s) or the transfer file name included a notation which informed RTR that the portfolio was a portfolio of accounts that previously provided a cease and desist from further direct communication with the consumer.

88.     Despite the Letter of Representation and Additional Letter of Representation, in an effort to collect the alleged debt, RTR caused a letter dated February 12, 2026 (the "February Letter") to be sent to Plaintiff directly.

89.     Plaintiff received and read the February Letter.

90.     Plaintiff's attorney did not consent to RTR's direct communication with Plaintiff.

91.     RTR did not send the February Letter to Plaintiff's attorney.

92.     RTR did not send any letters concerning the alleged debt to Plaintiff's attorney prior to sending the February Letter.

93.     RTR did not attempt to communicate at all with Plaintiff's attorneys concerning the alleged debt prior to sending the February Letter.

94.     It is standard practice for creditors to inform downstream entities, including debt collectors, of attorney representation letters and/or cease and desist letters received from consumers' attorneys.

95.     It is standard practice, when debts are sold and/or assigned to downstream entities, including debt collectors, that such debts are identified as subject to attorney representation letters and/or cease and desist letters.

96.     It is standard practice, when debts are sold and/or assigned in bulk portfolios to downstream entities, including debt collectors, that such portfolios are identified, either explicitly, or through an indicator in the portfolio's file name, as containing accounts that are subject to attorney representation letters and/or cease and desist letters.

97. RTR had actual notice of the Letter of Representation and Additional Letter of Representation.

98. RTR had actual notice of the Letter of Representation and Additional Letter of Representation either from the placement file or through a client portal provided to RTR by USB.

99. Thereafter, on an exact date known only to Apelles and USB, the alleged debt was transferred, assigned, or otherwise placed with Apelles for the purposes of collection on behalf of USB.

100. Apelles was notified by USB of Plaintiff's attorneys' representation in the transfer file(s) or the transfer file name included a notation which informed Apelles that the portfolio was a portfolio of accounts of consumer who were represented by counsel.

101. Apelles was notified by USB of Plaintiff's attorneys' representation in the USB account level documentation for Plaintiff.

102. Apelles was notified by USB of Plaintiff's attorneys' information in the USB account level documentation for Plaintiff.

103. Apelles was notified by USB of the cease and desist in the transfer file(s) or the transfer file name included a notation which informed Apelles that the portfolio was a portfolio of accounts that previously provided a cease and desist from further direct communication with the consumer.

104. Despite the Letter of Representation and Additional Letter of Representation, in an effort to collect the alleged debt, Apelles caused a letter dated March 26, 2026 (the "March Letter") to be sent to Plaintiff directly.

105. Plaintiff received and read the March Letter.

106. Plaintiff's attorney did not consent to Apelles's direct communication with Plaintiff.

12

107.	Apelles did not send the March Letter to Plaintiff's attorney.

108.	Apelles did not send any letters concerning the alleged debt to Plaintiff's attorney prior to sending the March Letter.

109.	Apelles did not attempt to communicate at all with Plaintiff's attorneys concerning the alleged debt prior to sending the March Letter.

110.	It is standard practice for creditors to inform downstream entities, including debt collectors, of attorney representation letters and/or cease and desist letters received from consumers' attorneys.

111.	It is standard practice, when debts are sold and/or assigned to downstream entities, including debt collectors, that such debts are identified as subject to attorney representation letters and/or cease and desist letters.

112.	It is standard practice, when debts are sold and/or assigned in bulk portfolios to downstream entities, including debt collectors, that such portfolios are identified, either explicitly, or through an indicator in the portfolio's file name, as containing accounts that are subject to attorney representation letters and/or cease and desist letters.

113.	Apelles had actual notice of the Letter of Representation and Additional Letter of Representation.

114.	Apelles had actual notice of the Letter of Representation and Additional Letter of Representation either from the placement file or through a client portal provided to Apelles by USB.

115.	A violation of 15 U.S.C. § 1692c(a)(2) has a close relationship to an invasion of privacy.

116.	A violation of Section 15 U.S.C. § 1692c(a)(2) is an invasion of privacy.

117.    Defendants invaded Plaintiff's privacy.

118.    A violation of 15 U.S.C. § 1692c(c) has a close relationship to an intrusion upon the rights to solitude and seclusion.

119.    A violation of 15 U.S.C. § 1692c(c) is an intrusion upon the rights to solitude and seclusion.

120.    Defendants intruded upon Plaintiff's rights to solitude and seclusion.

121.    A violation of 15 U.S.C. § 1692c(c) also has a close relationship to interference with the attorney-client relationship.

122.    A violation of Section 1692c(c) is an interference with the attorney-client relationship.

123.    Defendants interfered with Plaintiff's and her attorney's attorney-client relationship.

124.    The February Letter provided a deadline of March 29, 2026, to dispute the alleged debt, or any part thereof and/or to request validation of the alleged debt.

125.    In addition, the February Letter provided 3 discounted offers for Plaintiff to settle the alleged debt with deadlines of March 16, 2026, March 31, 2026, and April 15, 2026.

126.    The March Letter contradicted the February Letter because the March Letter demanded full payment from Plaintiff.

127.    USB placed the alleged debt with two different debt collectors at the same time, causing Plaintiff to be confused, misled, and/or deceived as to Plaintiff's rights, the status of the alleged debt, the amount was being demanded from Plaintiff, and the options Plaintiff had.

128.    The March Letter overshadowed the February Letter.

129.    USB is liable for the actions of the debt collectors it retains, transfers consumers'

accounts to, and/or assigns consumers' account to, for purposes of collection.

130. Plaintiff suffered injury-in-fact by being subjected to unfair and abusive practices of Defendants.

131. Plaintiff's injury-in-fact is traceable to the actions or inactions of Defendants.

132. Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

133. The communications herein caused Plaintiff wasted time, lost time, loss of enjoyment of life and the potential incurrence of fees.

134. Defendants infringed upon Plaintiff's right to seclusion.

135. Defendants infringed upon Plaintiff's right to quiet enjoyment of life.

136. Defendants infringed upon Plaintiff's right not to be harassed and oppressed by debt collectors.

137. As a result of Defendants' conduct, Plaintiff suffered anxiety, stress, and feared that Defendants would continue to contact Plaintiff directly despite Plaintiff's attorney's representation and Plaintiff's cease and desist.

138. As a result of Defendants' conduct, Plaintiff began to question her attorney-client relationship and Plaintiff's confidence in her attorneys was diminished.

139. The acts of Defendants as described in this Complaint were performed by Defendants or on Defendants' behalf by their owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority. As such, all references to Defendants in this Complaint shall mean Defendants or their owners, officers, agents, and/or employees.

140. Defendants' conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from

15

Defendants' conduct.

141. But for Defendants' actions, Plaintiff would not have had to spend time searching her records.

142. But for Defendants' actions, Plaintiff would not have had to spend time discussing this matter with her attorneys.

143. But for Defendants' actions, Plaintiff would not have become aggravated, frustrated, worried, fearful, and distressed.

144. Plaintiff's anger and frustration continue to this day.

145. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will continue to use abusive, deceptive, unfair, and unlawful means in their attempts to collect the alleged debt and other alleged debts.

146. A favorable decision herein would serve to deter Defendants from further similar conduct.

**FIRST COUNT**
**Violation of 15 U.S.C. §§ 1692c(a)(2) and 1692c(c)**

147. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

148. The Plaintiff is a "consumer" as that term defined by the FDCPA.

149. Capital Management is a "debt collector" as that term is defined by the FDCPA.

150. Monarch is a "debt collector" as that term is defined by the FDCPA.

151. RTR is a "debt collector" as that term is defined by the FDCPA.

152. Apelles is a "debt collector as that term is defined by the FDCPA.

153. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

154. Each letter defined in this Complaint is a "communication" as that term is defined by the FDCPA.

16

155.    The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

156.    15 U.S.C. § 1692c(a)(2), titled "Communication with the Consumer Generally," prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

157.    As described herein, Defendants violated 15 U.S.C. § 1692c(a)(2).

158.    A violation of 15 U.S.C. § 1692c(a)(2) has a close relationship to an invasion of privacy.

159.    A violation of Section 15 U.S.C. § 1692c(a)(2) is an invasion of privacy.

160.    Defendants invaded Plaintiff's privacy.

161.    15 U.S.C. § 1692c(c), titled "Ceasing Communication," prohibits a debt collector, subject to certain exceptions not relevant here, from communicating with a consumer in connection with the collection of any debt "[i]f a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer."

162.    15 U.S.C. § 1692c(c) further states, "[i]f such notice from the consumer is made by mail, notification shall be complete upon receipt."

163.    As described herein, Defendants violated 15 U.S.C. § 1692c(c).

164.    A violation of 15 U.S.C. § 1692c(c) has a close relationship to an intrusion upon the rights to solitude and seclusion.

165.    A violation of 15 U.S.C. § 1692c(c) is an intrusion upon the rights to solitude and

17

seclusion.

166. Defendants intruded upon Plaintiff's rights to solitude and seclusion.

167. A violation of 15 U.S.C. § 1692c(c) also has a close relationship to interference with the attorney-client relationship.

168. A violation of Section 1692c(c) is an interference with the attorney-client relationship.

169. Defendants interfered with Plaintiff's and her attorney's attorney-client relationship.

170. For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692c(a)(2) and 1692c(c) and are liable to Plaintiff therefor.

**SECOND COUNT**
**Violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10), and 1692f**

171. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

172. The Plaintiff is a "consumer" as that term defined by the FDCPA.

173. RTR is a "debt collector" as that term is defined by the FDCPA.

174. Apelles is a "debt collector as that term is defined by the FDCPA.

175. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

176. Each letter defined in this Complaint is a "communication" as that term is defined by the FDCPA.

177. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

178. 15 U.S.C. § 1692d provides, generally, that a debt collector may not engage in conduct the natural consequence of which is to harass, abuse, and/or oppress.

179. 15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false,

deceptive, or misleading representation or means in connection with the collection of any debt.

180.    15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

181.    15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

182.    15 U.S.C. § 1692g provides, generally, that a debt collector may not use any unfair and/or unconscionable means in connection with the collection of any debt.

183.    The February Letter and March Letter violated the FDCPA because RTR and Apelles were both attempting to collect the same debt at the same time, the March Letter overshadowed the February Letter, Plaintiff became confused, misled, and/or deceived as to the status of the alleged debt, and Plaintiff became confused, misled, and/or deceived as to the amount being demanded.

184.    For the foregoing reasons, RTR and Apelles violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10), and 1692f, and are liable to Plaintiff therefor.

## THIRD COUNT
## NEGLIGENCE

185.    Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

186.    Creditors owe consumers a duty of reasonable care in the collection of debts.

187.    USB owed a duty to Plaintiff to exercise reasonable care in its attempts to collect money from Plaintiff.

188.    USB owed a duty to Plaintiff to exercise reasonable care in the transfer of Plaintiff's account to Capital Management, Monarch, RTR, and Apelles.

189.    USB owed a duty to Plaintiff not to transfer Plaintiff's account to a debt collector that engages in deceptive acts and practices when attempting to collect debts.

19

190.    USB breached these duties by transferring Plaintiff's account to Capital Management, Monarch, RTR, and Apelles without any regard for the deceptive acts and practices that Capital Management, Monarch, RTR, and Apelles engages in.

191.    USB had actual knowledge, or in the alternative, constructive knowledge, of the unfair, unconscionable, harassing, abusive, oppressive and/or deceptive acts and practices that Capital Management, Monarch, RTR, and Apelles engages in regarding the accounts USB transfers to Capital Management, Monarch, RTR, and Apelles. Examples include: requiring reporting to USB, auditing Capital Management, Monarch, RTR, and Apelles, setting policies and procedures, and having the ability to recall accounts.

192.    As a direct and proximate result of USB's negligence, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages.

### FOURTH COUNT
**Substantially Assisting Violations of the FDCPA: Transfer of a Debt to a Debt Collector**

193.    Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

194.    USB transfers pools of consumer debts to Capital Management, Monarch, RTR, and Apelles for purposes of collection.

195.    USB participates in the placing and transfer of consumer debt portfolios and has the authority to control the transfers.

196.    USB exercises control over Capital Management, Monarch, RTR, and Apelles regarding the accounts USB transfers to Capital Management, Monarch, RTR, and Apelles by requiring reporting to USB, auditing Capital Management, Monarch, RTR, and Apelles, setting policies and procedures, and having the ability to recall accounts.

197.    USB knows or should know that Capital Management, Monarch, RTR, and Apelles engages in deceptive acts and practices.

198.    USB and Capital Management, Monarch, RTR, and Apelles engage in these practices to harass, oppress, or abuse consumers.

199.    USB and Capital Management, Monarch, RTR, and Apelles engage in these practices to coerce consumers into paying debts.

200.    USB knowingly or recklessly assisted Capital Management, Monarch, RTR, and Apelles in Capital Management, Monarch, RTR, and Apelles's deceptive acts and practices.

201.    As a direct and proximate result of USB's conduct, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages.

## JURY DEMAND

202.    Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered as follows:

a.  Finding Capital Management's actions violate the FDCPA; and

b.  Finding Monarch's actions violate the FDCPA; and

c.  Finding RTR's actions violate the FDCPA; and

d.  Finding Apelles' actions violate the FDCPA; and

e.  Awarding damages to Plaintiff pursuant to 15 U.S.C. § 1692k; and

f.  Awarding Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1692k, calculated on a "lodestar" basis; and

g.  Awarding the costs of this action to Plaintiff; and

h.  Actual, treble, exemplary, and punitive damages on Plaintiff's negligence cause of action against USB; and

i.  Actual, treble, exemplary, and punitive damages on Plaintiff's Substantially Assisting Violations of the FDCPA cause of action against USB; and

j.  Awarding pre-judgment interest and post-judgment interest to Plaintiff; all together with

k.  Such other and further relief that the Court determines is just and proper.

21

Dated: June 30, 2026

Respectfully Submitted,

*/s/ Antranig Garibian*
**Antranig Garibian, Esquire**
Garibian Law Offices, P.C.
261 Old York Road, Unit 427
Jenkintown, PA 19046
*Counsel for Plaintiff Deborah White*